May it please the court, I'm Quinn Lobato on behalf of Plaintiff Appellant Anthony Robinson. The issue before the court today is whether or not the language of the Fair Credit Reporting Act has waived the sovereign immunity of the United States with respect to two sections, section 1681N and 1681O. Inconceivable, extraordinary, absurd, unlikely. These are the words the government uses to describe the language in the Fair Credit Reporting Act and notably the one word you won't hear is the only word that matters which is ambiguous. I will argue today that there are two questions this court should be looking at. The first issue I'll be discussing is what is the appropriate test that this court should be applying when it's analyzing whether or not the sovereign immunity of the United States was waived under this statute and the second issue is whether or not there's any special reason or rule or this court to override the plain unambiguous language of the Fair Credit Reporting Act which I will argue there is no such reason. To the first point of the correct test, it's important that the government acknowledges that the test the court should employ when it's looking at whether or not language in the statute waives sovereign immunity is whether or not that language is unequivocal. Here the government has made no argument whatsoever that there's any ambiguity or any equivocal nature to the language of the Fair Credit Reporting Act. If we look at the very first section of the Fair Credit Reporting Act 1681A, what we will see is that the very first thing Congress says is that the definitions and rules of construction set forth in this section are applicable for purposes of this subchapter. So the government cites many cases where they say you don't have to apply the same meaning in every instance in the statute. That does not and cannot apply here because when you're looking at the Fair Credit Report Act, Congress has mandated that the word person be applicable for every provision in the subchapter. And that's at the very beginning of the Fair Credit Reporting Act. We see the very... I'm just asking, so isn't that typical of those things that we have in that original section that apply generally across the board? Sometimes it says section rather than subchapter. So in this case, this is at the beginning of the Fair Credit Reporting Act and it says the entire subchapter. So while it would not apply to... The Fair Credit Reporting Act is one subchapter of the Consumer Credit Protection Act along with the Equal Credit Opportunity Act and the other acts that regulate consumer protection. So you wouldn't use this definition of person in the Equal Credit Opportunity Act, for example. It's limited to this subchapter. But yes, by putting this language in there, Congress is intending that the same meaning apply throughout this specific subchapter. This is my first time here. I apologize. So that's 1681A. The provisions were... I've seen an awful lot of sovereign immunity waivers. I must say I've never seen a waiver of sovereign immunity, what you pretend is a massive waiver of sovereign immunity done in such an offhanded way as this. One of the... Waivers of sovereign immunity, they vary a But all of them seem to have... Congress seems to have been really more care and thought in the head here. If you look at the Federal Court Claims Act, for example, and they often begin... The Clean Water Act is the same way they refer to the government as the United States. It says the United States should rely on or respect the provisions of this title relating to public claims in the same manner, to the same extent as a private individual under life circumstances, which will not be liable for interest, property, judgment, or impunity damages. And that seems more or less typical on waivers of sovereign immunity than they've done with some explicit care as to the terms. And here, you're claiming that really sovereign expulsion of the government is a massive liability to be done in this offhanded fashion. That troubles me because I haven't seen waivers of sovereign immunity be this casually effectual. Well, I respect Your Honor's concern. I don't agree that it was casually done. If you look at the 1996 Amendment to the Fair Credit Reporting Act, it was specifically intended to dramatically expand liability. Before the Fair Credit Reporting Act in 1970, when it was created, it was only designed to cover credit reporting agencies. 1996, it was expanded to cover furnishers as well. So Congress is in the mindset of expanding liability greatly. So it's not accidentally creating liability by the interplay of sections. You say it's not casually done, but the way you would interpret it, there would be a waiver of sovereign immunity as to foreign governments. There would be a waiver of sovereign immunity as to state governments. There would be a waiver of sovereign immunity as to tribal governments. I mean, that's astonishing breadth. Federal, state, tribal governments. And it's unconstitutional to interpret it that way because in the Seminole Tribes case, the Supreme Court said Congress doesn't have the authority to waive state sovereign immunity and then he wants to give an interpretation of the statute that would get Congress indulging in an unconstitutional act. Your Honor, I would ask you to look at the RFRA. That's the Religious Freedom Restoration Act. In the City of Bourne case, the Supreme Court did hold that it could not apply, the RFRA could not apply to states. It was unconstitutional in that context. But since then, Supreme Court has repeatedly upheld that it still applies to the federal government of the United States. So, sovereign immunity is not a package deal. If the court finds for... In the way that you have this statute expressed, we just can't carve out exceptions that the statute doesn't provide for if we interpret it, if we take your view. Respectfully, I think it's the government that's carving out exceptions here. You're saying that it applies so broadly that every government around the world and every tribal entity and every state government has had its sovereign immunity waived by Congress. I mean, that's a principle of staggering breath in a very elliptical way. Respectfully, that's not the basis of our argument because the court does not have before it any issue about whether the state has waived its sovereign immunity. And the importance of focusing... So, what is your position with respect to that? Is it in fact as broad a waiver as Judge Wilkinson has just described? My position is that it's a waiver of the United States' federal sovereign immunity, which is the only issue before the court. We have to decide based on the perspective of the future of the nation, so what does that do with respect to all the arguments the state has? Well, they're subject to completely different considerations, which was the second point I was going to make. If you're looking at... Well, the first point, really. If you're looking at how does the court analyze this statute, it doesn't have to consider every application. It has to consider the application of the statute. Congress didn't parse this the way you're trying to parse it now, which is, well, some of the things that the courts have done, the civil circuit seemed to go away initially, but then there was another later civil circuit opinion that seemed to back off from that and said, no, there's no waiver of tribal sovereign immunity at all. Everybody's getting back at it. And the design circuit case by Judge McCann seems... It's flat on the contrary to what you're saying. Those cases actually highlight one of the issues here. When you're looking at the government's brief, they conflate the waiver of state sovereign immunity with the waiver of federal sovereign immunity. You cannot conflate them. There's a constitutional principle in a constitutional amendment, the 11th Amendment, which prohibits Congress from waiving the sovereign immunity of the states. I don't think the court needs to reach that decision. And the principle... Not in this case. Absolutely not. The principle of law that I think the court is overlooking is that, one, essentially what you're considering a mistake. United States versus United States? What the court is... That's an odd caption for a case. The court is highlighting what can be considered as a mistake. So it's not the purview of the court to correct what would be a mistake. And the important principles that the court should not overlook in this case are, one, the clear and... Is it your position that this opens up the United States government to criminal prosecution? No, Your Honor. Because it's not necessary to reach the question of the interpretation of Q and whether Congress intended to waive the intent there. Because the intent... Yes, that's... The Federal Trade Commission, for example, and the Consumer Finance Protection Bureau would be suing the United States. And you have some parts of the United States government suing other parts of the United States government because the Federal Trade Commission has enforcement responsibility. That's correct. And it would be suing... The government would be suing itself civilly, and the government would be prosecuting itself criminally. And all of this under a very... A very direct, direct, clear, unequivocal language. There's no problem with the Congress doing that. The Congress has every right to do that. The sovereign immunity of the United States can be waived by Congress. And that's the fundamental overriding principle. The court is not supposed to go into an elaborate consideration of whether or not that was an appropriate decision. Perhaps you think it's too broad. Perhaps you think they didn't budget for it as the government raises the issue. But that's not the test that is applicable. I have a great deal of respect for Judge Easterbrook. But I think he got the Seventh Circuit case plain and wrong. And the Seventh Circuit has backed away from it. And I think Judge McKeon's opinion in the Ninth Circuit... I read them both. I think Judge McKeon's opinion was one of the most persuasive and one of the most thorough. And I agree. I'm just not anxious to fly into direct conflict. Well, if you look at the authority he relied on in that, he's misconstruing the authority. And that's the important thing. The government has taken, and the court in the Ninth Circuit, has taken various canons of construction and crafted this big ball of other reasons why the court should ignore the plain language of the statute. And I'm encouraging this court to stick to the number one overriding and Supreme Court-dictated principle on statutory construction, which is you look at the intent expressed in the statute. You don't go into congressional history. You don't go into whether or not Congress may have considered the ramifications of it. I mean, that's legislating from the bench, is it not? How are we even considering these things? They're not relevant, and they don't cast doubt. And when you do have cases where the court has said, okay, I see plain language. I see your argument. But I have other reasons. When we're going plain language plus, when we get to plain language plus... Okay. All right, Your Honor. Thank you. Thank you. Good morning. May it please the court. Sarah Carroll on behalf of the government. Congress can waive sovereign immunity of the United States only if it speaks unequivocally and clearly. As the Ninth Circuit held last year in Daniel v. National Park Service, as I know the court is aware, Congress did not do so in FCRA. Plaintiff's central submission is that the court has no choice but to mechanically apply the statutory definition of person throughout the Fair Credit Reporting Act. I have a question about that. Because Congress also has a benefit of a judicially proposed decision in the Seventh Circuit case and did nothing to change the statutory response. Doesn't that suggest that, not to satisfy, but to clarify the true intent of the amendment? I'm not sure how much inference can typically be drawn from congressional inaction, Your Honor. I mean, courts decide things all the time, and sometimes Congress steps in to correct it, but sometimes it doesn't. But I think what's more important is that plaintiff's central submission here is directly contrary to the Supreme Court's decision in employees of the Department of Public Health and Welfare, which concerned the Fair Labor Standards Act, which had long imposed damages on employers. And then in 1966, Congress amended the act to add state hospitals to the definition of employer. And the Supreme Court nonetheless held that that was not a waiver of sovereign immunity. The court recognized that by the, quote, literal language of the statute, state hospitals were now subject to damages under the FLSA. But Congress said that, you know, the Supreme Court, I'm sorry, said that Congress acting responsibly would be presumed not to have done such a thing without somehow addressing it in a clearer way. The case relied fairly extensively on legislative history to decide the result. The case mentioned that there was nothing in the legislative history. I don't think it is. As far as I'm aware, the Supreme Court has never questioned, much less overruled, employees, so it remains binding precedent. The Supreme Court has looked to legislative history and also statutory structure and context, which we are also relying on probably more heavily in more recent years. You know, for example, in U.S. Department of Energy, which is a 1992 decision when the court was already in, you know, a pretty textualist mindset, the court is looking to whether there is anything in the statute's structure or context that would have led Congress to believe that it was subjecting the United States to punitive, I think it was civil penalties. And, you know, outside the sovereign immunity. Yes, that's absolutely right, Your Honor. And when Congress wants to subject the United States to punitive damages, it says so more clearly. As Your Honors have noted, a number of other anomalies would also arise from plaintiff's theory, which again is that this person definition has to be mechanically placed in every provision of the act that uses the word person. You know, as Judge Floyd first noted, it would subject the United States to criminal liability, a result that the Ninth Circuit described as, quote, patently absurd and unprecedented. As Judge Wilkinson noted, just a few months before these 1996 amendments, the Supreme Court had decided the landmark case of Seminole Tribe in which it held that Congress could not subject states to private damages actions under the Commerce Clause. And under plaintiff's theory, Congress would have then, just a few months later, turned around and passed this patently unconstitutional act as applied to state governments. And plaintiff offered no basis for treating states or foreign governments or local governments any different from the federal government under her reading. As I read it also in this second statute, and I think it's section 1681 UJ, the FBI has given certain access to these consumer reports. And the statute goes into great lengths talking about the degree to which sovereign immunity is waived in cases where the FBI abuses its access. So you have in this statute a very limited waiver of sovereign immunity in very limited circumstances, which Congress gave great thought to. And I'm not sure how I would resolve the tension between the thought that is given to the waiver in 16UJ, which would have been totally unnecessary if the plaintiff's broad sweeping view of the term person in AB were adopted. That whole limited waiver would have been just surplusage. I completely agree, Your Honor. 1681U is very explicit in waiving the United States sovereign immunity for a limited scope of conduct. And 1681U, I think, also was enacted just a few months before the 1996 amendments on which plaintiff relies. So it would have been very peculiar if Congress had enacted that thoughtful, narrow waiver and then a few months later just turned around and sort of blew the whole thing up with this imported into the whole act. Another point that I think Can I ask a follow-up there? Sure. Judge, Wilkinson provision of the Federal Claims Act, where the waiver is very explicit, defines the waiver to include the United States. Do you think that the use of the United States is absolutely necessary for those magic orders in order to waive sovereign immunity or something less than that? Your Honor, I don't think that magic words are necessary. I think that there could be some waiver that Congress could craft that would be explicit and unequivocal and leave no doubt about what Congress was trying to do, even if it didn't use the term United States. But that's not what we have here. So, with respect to the Equal Credit Opportunity Act, this argument in that case suggested that language was very similar to what we have here. The use of the government of the United States was enough to waive sovereign immunity. I guess two questions. Is it the government's position that that case was incorrectly decided? Answer that one first. So my understanding of the government's position is that we view the Equal Credit Opportunity Act differently than FCRA because the Equal Credit Opportunity Act, as this Office of Legal Counsel opinion that plaintiff cites in her brief notes, the Equal Credit Opportunity Act has an express non-waiver of the United States' immunity with respect to punitive damages. And I think that the conclusion has been, well, when you're expressly making clear that you're reserving immunity with respect to punitive damages, that has to imply that you're waiving immunity with respect to something else. Well, that is the plain text of the provision that's at issue there. So I think that goes to underscore that magic words aren't needed. But there Congress made very, very clear that, yes, it was thinking specifically about U.S. government liability and it was intending to impose some sort of liability on the government but not punitive damages. That's very different from here where we have this 1970 Act that's quite narrow and targeted, really, which, as plaintiff noted, principally regulated consumer reporting agencies and used the person definition only for that, well, primarily for that purpose to define the scope of permissible conduct for consumer reporting agencies. And plaintiff's theory is that then, 26 years later, in 1996, when Congress essentially engrafted this new, very broad statutory scheme on top of the narrow and tailored 1970 Act, it silently intended to have this broad person definition that did very different work in 1970 apply mechanically throughout the entire Act. And there's just... I was thinking earlier that I thought looking at the legislative history was problematic because of the notion that that's not appropriate in the context of punitive damages. But I will have to say that perhaps this is a question that the Director did talk about that it seems very odd that this kind of a waiver generated nearly a peak from anyone when this change was made. And on top of that, there was no accounting for the significant liability that would be imposed on the government as a result of that. A lot of the encounters in the Department of Government just revealed none of that. That's... It suggests to me that this is not something that the government intended, but I think that's a problem. Well, I think... I do think that's a great point, Judge Diaz. And in the Sossaman decision in 2011, while not actually, I don't think, looking at legislative history, Justice Thomas noted that the purpose of looking for a clear statement in the statute is to make sure that Congress is acting deliberately and intentionally and is not resolving important issues inadvertently by use of broad or ambiguous language. So I think that in the special context of sovereign immunity, where we were particularly concerned about figuring out what Congress actually was thinking and what Congress actually intended, I think it is... That is an important thing to look at. And as Your Honor notes, for example, the Congressional Budget Office estimated the cost to the government of the predecessor bills to the 1996 Act as being quite small, less than $10 million, comprised, I think, of judicial costs and then costs of the executive damages liability by newly opening the government to monetary damages for a broad range of conduct in which the government routinely engages. I think it's really the absence of some clear statement that really leaves no doubt about what Congress is doing. I think, as Judge Wilkinson... ...beyond the language to consider context of other considerations. Right. But that's absolutely what courts are supposed to do in the context of sovereign immunity, which is a special... You know, whatever a court might think of adhering to plain language in other settings. I don't think we would concede that, Your Honor. I think that when Congress is subjecting the United States to damages, it speaks very clearly, and its failure to do so here creates an ambiguity in the statute, as I think the Ninth Circuit rightly recognized. And I would note again that the interpretive method that plaintiff is asking this court to adopt is directly contrary to employees of the Department of Public Health and Welfare, which, you know, sure, it's a somewhat old Supreme Court decision, but it's binding precedent. And in years since then, the Supreme Court has, again, reaffirmed that when we're in the area of potentially sensitive considerations at stake, courts need to be very careful in figuring out what Congress did. You know, for example, in... These are not sovereign immunity cases, but in Bond or in Northwest Austin, there, too, you had statutory definitions that looked pretty clear on their face. But nonetheless, the Supreme Court held, well, Congress couldn't possibly have actually intended to do this. So Congress used the other... I'm sorry, the Supreme Court used the other interpretive tools that were available to try to figure out what Congress actually intended to be doing. I would like to believe that Congress reacted immediately to every circuit court opinion that we handed down. Unfortunately or fortunately or whatever, it's not at all unusual for Congress, which has an enormous amount on its plate, to let something marinate for a while and see what other circuit courts have come up with and what the Supreme Court has come up with. But it's the case many, many times that Congress, as busy as it is, does not react to a single circuit court decision. But there's this sort of de rigueur over there that you let the problem germinate and marinate for a while and see how the circuits as a whole handle it and see how the Supreme Court deals with it. So that doesn't strike me as unusual. They didn't react after Daniel so far either. On the 9th circuit case came down. Far as I know, they haven't reacted to that. Right. I'm not aware of any reaction either, Your Honor. One of the things I think my friend, Judge Diaz, points out correctly, that you can't make this a matter of talismanic phrases or magic words. But what you can do is subject it to the fact that all of the discussions of this subject have gotten the sentiment that the waiver has to be bi-clerical and not ambiguous. I was wondering what you made of the Supreme Court's interpretation of Cooper and the meaning of the word person there in that decision. Right. So there the court, if I recall correctly, was interpreting the Sherman Act and considering whether the United States should be considered a person under the Sherman Act. And although there I don't believe person was a statutorily defined term, the Supreme Court said, well, customarily the government is not considered a person while corporations and some other organizational entities are. And the Supreme Court said that it would be especially unlikely that Congress would intend for the United States to be treated as a person under the Sherman Act because that would open the United States to the liabilities that the Sherman Act imposes on persons. Right. That's right. But I think that, you know, when Congress engrafted this new 1996 statute on top of the 1970 Act, I think it's quite possible that what Congress really was thinking to the extent it considered the matter was this more conventional meaning of person that the Supreme Court considered in Cooper. But I think what I felt like I had to come back to in the end was somebody mentioned it, I think it was Judge Floyd, I think it was Judge Floyd who mentioned it, that in trying to figure out what Congress really wanted to do, it's not wrong to take a holistic view. And, in fact, I think we probably share that context is important in statutory construction that there always should be a high history. Speaking for myself alone, I thought that we wavered miserably when it came to the sovereign immunity of foreign governments, state governments, and all the constitutional problems that are tribal governments subjected in the United States to prosecution. The other wavers, limited as they are, become essential surplus energy. I don't know if this seems like, just as a practical matter, if you take a statute as a whole, there are a lot of problems down the road. Yes, I agree. A lot. A lot of people couldn't figure out how to solve. Right. I mean, I think that sums this up pretty well, Your Honor. The Supreme Court has said over and over, including in recent years, that statutory construction is a holistic endeavor. And as part of that holistic endeavor, all the more so in the context of sovereign immunity, you have to look at statutory context and structure and the implications of the interpretation that you're considering for the statute as a whole. And I think the court has pretty well canvassed the, you know, many of the anomalies that would arise from taking plaintiff's view and applying the person definition throughout the entire act. And in light of all those anomalies, as the Ninth Circuit noted in Daniel, as Judge McKeon explained, there's just, at a minimum, a whole lot of doubt about whether Congress actually wanted that. And I would submit that there is no reason to think that Congress intended that. I'm happy to answer any other questions that the court might have. Thank you. So, Rebecca? Yes, Your Honor. One of the first things I'd like to point out is that the language in 1681UJ would not become surplus if you were to interpret the way that we advocate. Because when you look at 1681UJ, the liability that the FBI is subjected to, it is not identical to the other statute in 1681N and O. The first provision, the FBI is subject to $100 statutory damages. The other provision is $100 to $1,000. So if you're looking at the statute and you're relying on the guiding principle you should be relying on, which is the language of the statute, not outside the statute, we see that within the statute there is a reason for that specific waiver. And it's to distinguish it and treat it differently. The FBI is subject to a different set of fines. I just think that there you have an example of an explicit and unambiguous waiver of sovereign immunity. And what you're arguing for is just a massive waiver of sovereign immunity. And it seems to me that Congress, when it was interpreting UJ, recognized the principle that if it was going to waive sovereign immunity, that it had to be done in somewhat precise, uncritical terms. Well, I think what you're missing is that that statute, the FBI statute, only applies to the government. So it doesn't apply to persons. It wouldn't be appropriate to use the word person with that statute because then you would have something that doesn't make sense. It's not subjecting banks or other furnishers under the Fair Credit Reporting Act to those statutes. So a lot of the cases the government relies on to say there's a principle where if — Congress was conscious that when it was waiving sovereign immunity in government, it had to be proceeded generally in precise and explicit terms. That was a recognition of the interpretive principle that we were talking about. Well, what it recognized was that it didn't want to treat the FBI the same as violations of every other statute. It gave it a different set, a different progression in the amount of damages. It's not identical. It's not surplus. It's just not identical. And also, if Congress is treating the federal government and the executive branch as any other person who decides to furnish information under the Fair Credit Reporting Act, the only way to guarantee accuracy in that system is for the federal government to be subjected to the same rules and the same liabilities as everybody else. Otherwise, if we want to take a step back and look at what Congress is doing and what Congress's tensions are, which I strongly argue against, we don't need to do that. But if we were to look at it, the Fair Credit Reporting Act is so that consumers have confidence and businesses have confidence in the accuracy of credit reports. Now we're saying Congress wanted to maximize accuracy by exempting the federal government from participating in a system and being liable under the same rules as everybody else in that system. So it would totally undermine the purposes of the Fair Credit Reporting Act to exempt the federal government under there. Again, the court shouldn't even be looking at this because there's no reason and the government cited no cases whatsoever that stand for the proposition that in the waiver of United States federal sovereign immunity as distinct from state sovereign immunity. When you go there, you're giving up your whole argument. Because your whole argument is that everything is waived. And then you come, you go back around and say, oh no, not everything is waived, just federal sovereign immunity, not state sovereign immunity, not tribal sovereign immunity. I'm actually not saying that. I'd love to argue before you on all those separate issues, but that's not what we, we're not, we don't have to reach that. And I think the court can't overlook. That's not the way the statute is written. I mean, you are, you're so stuck here with an all-numbing proposition. No, Your Honor. That would be against the principles outlined by the United States Supreme Court, which specifically in the context of the Religious Freedom Restoration Act, RFRA said it doesn't apply to states, but oh yes, it does apply to the federal government. The federal government doesn't get out because Congress overstepped its bounds. If Congress oversteps its bounds and violates the Constitution in trying to waive state sovereign immunity and makes that mistake, the courts can come in. It's within the purview of the courts to say that was an unconstitutional exercise of congressional authority. The same principle does not underlie consideration of federal sovereign immunity. There's no constitutional principle that says the federal government can't waive the immunity of the federal government. The case law regarding sovereign immunity comes directly from a history where it is the court restraining itself. And now we're taking a system designed for the court to restrain itself, the court saying if Congress wants for the government to consent to be sued, Congress needs to be clear. Then we're taking that test. The perspective spheres of the Privacy Act and the FCRA. The Privacy Act regulates disclosures by any government agency of any kind of personal identifying information. So it pretty much involves every single government agency that exists. And the remedies under the Privacy Act are distinct from the remedies under the Fair Credit Reporting Act. The Fair Credit Reporting Act does also contain some... Right. And courts have held that the remedial scheme does not include any monetary damages. So... What I'm wondering is because you find in UJ very detailed waivers of sovereign immunity and then in the Privacy Act you have a very detailed enforcement scheme and a very detailed remedial scheme. And it just seems to me that it's hard for me to recognize the very detailed remedial and enforcement schemes and the very detailed waivers that exist with the approach that you're advocating, which seems to me to be just sort of a blockbuster approach intention. And it odds with the detail with which Congress has considered this whole problem elsewhere in law. And I grant you that the Privacy Act and the SCRA cover exactly the same thing, but there's a substantial overlap. Congress went about it with a scaffold wall, not a bludgeon. Well, I would just ask this court not to try to correct Congress's mistake to the extent that there is any and to find that the clear language of the Fair Immunity of the United States has been waived. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd